## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEAN K. CONQUISTADOR, | ) | CASE NO. 3:19-cv-1471 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROLLIN COOK, et al., | ) | DECEMBER 20, 2022 |
| *Defendants.* | ) | |

## MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 60)

Kari A. Dooley, United States District Judge:

In this civil rights action, Plaintiff Jean K. Conquistador alleges a violation of the Eighth Amendment prohibition against cruel and unusual punishment arising out of the deliberate indifference to his medical needs by Defendants April Ralph, Angel Graniello, and Suzanne Gomes, all nurses with the Department of Correction ("DOC") who worked at Garner Correctional Institute ("Garner") during Plaintiff's incarceration there.[1] Specifically, Plaintiff alleges that Defendants failed to promptly treat his hemorrhoids. These Defendants filed a motion for summary judgment and assert that there is no genuine issue of material fact as to the Eighth Amendment deliberate indifference claim, and alternatively, they are protected by qualified immunity. For the following reasons, the motion for summary judgment is GRANTED. (ECF No. 60)

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute

---

[1] On October 19, 2019, the Court dismissed the Complaint on initial review and afforded Plaintiff an opportunity to amend his complaint. *See* ECF No. 8. On July 2, 2020, Plaintiff filed an Amended Complaint asserting claims for deliberate indifference to medical needs, retaliation, medical negligence, and medical malpractice against ten Defendants. Following a second initial review, the Court dismissed the Amended Complaint. *See* ECF No. 26. Plaintiff appealed. By mandate filed April 16, 2021, the Second Circuit vacated the dismissal only as to the deliberate indifference claims against these nurse Defendants. ECF No. 37. The Court noted that, although the claim had "some likelihood of merit," the record on appeal was limited, and remanded the case for further factual development. *Id.*

as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224

F.3d 33, 41 (2d Cir. 2000).

**Facts**[2]

On February 13, 2019, Conquistador was transferred from Osborn Correctional Institution to Garner. Defs.' Local Rule 56(a)1 Statement, ECF No. 60-6, ¶ 2. Upon arrival, Conquistador denied having any medical or mental health needs. *Id.* ¶ 3.

Conquistador first met Nurse Suzanne Gomes on March 6, 2019, when he was being screened for placement in restrictive housing. *Id.* ¶ 4. He did not mention hemorrhoids during that visit. *Id.* ¶ 5.

Nurse Gomes next saw Conquistador on March 15, 2019 during sick call. *Id.* ¶ 6. Conquistador complained of a "funny feeling" in his right flank area that was not associated with urination. *Id.* ¶ 7. He was unable to describe the feeling in greater detail and said that it occurred infrequently. *Id.* ¶ 8. Nurse Gomes put Conquistador on the MD sick call list, the DOC equivalent of a referral to a doctor for treatment or medication a nurse cannot provide. *Id.* ¶¶ 9–10. Conquistador had no other complaints during this visit; he did not mention hemorrhoids. *Id.* ¶ 11.

On April 9, 2019, Conquistador saw Nurse Gomes for complaints of an earache. *Id.* ¶ 12. She noted a large buildup of wax in his ears and ordered an over-the-counter medication to treat ear wax buildup. *Id.* ¶ 13. Conquistador made no mention or complaint of hemorrhoids. *Id.* ¶ 14.

---

[2] The facts are taken from Defendants' Local Rule 56(a) Statements and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

   Defendants informed Plaintiff of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF No. 60-7. Plaintiff was granted several extensions of time, from January 20, 2022 until July 5, 2022 to respond to the motion, but to date has not filed any opposition papers. *See* ECF No. 105. Accordingly, Defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

Conquistador first met Nurse April Ralph on June 5, 2019, when she screened him for placement in restrictive housing. *Id.* ¶ 15. He made no complaints about hemorrhoids at this meeting. *Id.* ¶ 16. On June 6, 2019, Nurse Gomes gave Conquistador a tuberculosis test. *Id.* ¶ 17. The test was negative. *Id.* ¶ 18. Conquistador made no complaints of hemorrhoids at this visit. *Id.*

On June 8, 2019, Conquistador called to Nurse Gomes from his cell in the restrictive housing unit. *Id.* ¶ 19. When Nurse Gomes turned around, Conquistador said, "not you, keep walking." *Id.* ¶ 20. A few minutes later, Conquistador called to the officer's station and said he wanted sick call and that Nurse Gomes was ignoring him. *Id.* ¶ 21. Nurse Gomes and several officers told Conquistador to submit a sick call request. *Id.* ¶ 22. Nurse Gomes noted at this time that Conquistador was not in acute distress but was standing at his cell door speaking loudly with other inmates. *Id.* ¶ 23. Conquistador did not submit a medical request and made no complaint or mention of hemorrhoids. *Id.* ¶ 24.

Conquistador first met with Nurse Angel Graniello on June 10, 2019. *Id.* ¶ 25. Conquistador claimed he had a scratch on his penis from masturbating too much. *Id.* Nurse Graniello observed no scratch. *Id.* ¶ 26. Conquistador did not complain of hemorrhoids at this visit. *Id.* ¶ 27.

On July 9, 2019, Conquistador saw Nurse Ralph for screening before restrictive housing placement. *Id.* ¶ 28. He later screamed at her that he needed a sick call visit for all his issues and threatened to sue her if he did not receive one. *Id.* ¶ 29. Nurse Ralph told Conquistador to submit an inmate request for each medical issue and give the medical unit time to triage the requests. *Id.* ¶ 30.

Later that day, Conquistador first mentioned hemorrhoids. *Id.* ¶ 31. He was banging on his

cell door and shouting at Nurse Graniello that he had hemorrhoids and an ear infection. *Id.* Nurse Graniello told Conquistador to submit a sick call request which would then be triaged, *i.e.*, she directed him to follow the procedure by which inmates receive medical care. *Id.* ¶ 32.

Conquistador saw Nurse Ralph on July 19, 2019, at which time he complained of right ear discomfort and hemorrhoids. *Id.* ¶¶ 33–34. He showed Nurse Ralph a tissue with blood on it that he kept in a cup and said the blood was from his hemorrhoids. *Id.* ¶ 35. Nurse Ralph educated Conquistador about his diet and instructed him to avoid straining while defecating. *Id.* ¶ 36. She also gave Conquistador educational forms to read and instructed him to report any worsening symptoms to nursing staff. *Id.* ¶ 37. She did not order Ibuprofen to address Conquistador's complaints of pain because he already had an order in place for Ibuprofen. *Id.* ¶ 38.

Lastly, Nurse Ralph put Conquistador on the MD sick call list, the procedure for him to be seen by a doctor or APRN. *Id.* ¶ 39. Referral to a doctor or APRN was needed because, as a nurse, she was unable to prescribe medicated suppositories or stool softeners; Nurse Ralph determined that examination by a doctor was needed to address Conquistador's complaints of hemorrhoids and ear issues. *Id.* ¶ 40. On July 24, 2019, Dr. Valletta prescribed a stool softener and suppositories for Conquistador to treat his complaints of rectal pain, swelling, and bleeding. *Id.* ¶ 41.

Conquistador next met Nurse Ralph on July 30, 2019, during morning medication administration. *Id.* ¶ 42. Conquistador was standing at his cell door rambling and yelling inappropriate statements at Nurse Ralph. *Id.* ¶ 43. He refused to take his medication unless she gave him another suppository. *Id.* Nurse Ralph asked Conquistador to take his medication and then they would discuss his concerns, but he became more hostile and began making threatening gestures. *Id.* ¶ 44. Defendant Ralph then removed Conquistador's medication from the trap in his

cell door and closed the trap. *Id.* ¶ 45.

Later that morning, Conquistador yelled at Nurse Ralph using abusive and derogatory language and accused her of "melting" his suppository. *Id.* ¶ 46. That evening, an officer had to intervene before Conquistador would take his medication. *Id.* ¶ 47.

On July 31, 2019, Dr. Valletta met with Conquistador at his cell. *Id.* ¶ 48. Conquistador told her his hemorrhoid had improved and denied rectal pain, changes in bowel movements, blood in his stool, or weight loss. *Id.* ¶ 49. Dr. Valletta agreed to Conquistador's request that the suppositories be changed to twice per day. *Id.* ¶¶ 50–51.

Conquistador met with Nurse Ralph on August 2, 2019, at which time he again refused to take his medication. *Id.* ¶ 52. He called Nurse Ralph a derogatory name and threatened to sue her. *Id.*

Nurse Gomes met with Conquistador on August 18, 2019, during administration of morning medication in restrictive housing. *Id.* ¶ 53. After taking his medication, Conquistador showed her a small healing area on his knuckle and said he needed "something for this." *Id.* ¶ 54. The area was small, clean, and dry; it did not appear red, irritated, or infected. *Id.* Nurse Gomes told Conquistador that the area looked almost healed and advised him to keep it clean and dry. *Id.* ¶ 55. Conquistador responded, "Oh . . . so you're refusing to treat me? That's another lawsuit payout for me." *Id.* ¶ 56. Nurse Gomes said she was not refusing to treat him but that the area was nearly healed with no sign of infection. *Id.* ¶ 57. She told Conquistador that if he disagreed with her assessment, he could submit a request for a doctor to check it. *Id.* ¶ 58. Conquistador did not mention hemorrhoids at this meeting. *Id.* ¶ 59.

Nurse Gomes last met Conquistador on August 22, 2019, while he was in restrictive

housing. *Id.* ¶ 60. Conquistador was standing at his cell door banging on and frequently kicking the door. *Id.* ¶ 61. During administration of morning medication, Nurse Gomes gave Conquistador a dose of clotrimazole cream prescribed for his feet. *Id.* ¶ 62. Conquistador loudly yelled that he needed more cream and ordered Nurse Gomes to come and see his "big balls." *Id.* Nurse Gomes felt she had given Conquistador an adequate amount of cream. *Id.* ¶ 63.

Later that day, Conquistador ordered Nurse Gomes to get him Tylenol. *Id.* ¶ 64. When she asked whether he had an order for Tylenol, Conquistador said he did not, but wanted it anyway. *Id.* ¶ 65. Nurse Gomes told Conquistador to submit a request and he would be triaged, but Conquistador refused and swore at her. *Id.* ¶ 66. Conquistador did not mention hemorrhoids. *Id.* ¶ 67.

On August 30, 2019, Conquistador was transferred to Bridgeport Correctional Center and had no further contact with any Defendant. *Id.* ¶ 68.

On September 19, 2019, Conquistador was prescribed a hydrocortisone cream and witch hazel pads for his hemorrhoids. *Id.* ¶ 69. On October 7, 2019, a doctor noted that the hemorrhoids had improved, the medication was working, and he did not need to see a gastroenterologist. *Id.* ¶ 71. Conquistador agreed with the doctor's assessment. *Id.* ¶ 71.

**Discussion**

The only remaining claim in this case is an Eighth Amendment claim for deliberate indifference to serious medical needs against Nurses Gomes, Ralph, and Graniello. The Second Circuit remanded the case for consideration of these claims in light of Plaintiff's allegations in the Amended Complaint that: he experienced painful hemorrhoids from February of 2019 through November of 2019; he submitted numerous requests complaining of hemorrhoids but received no

responses; Defendants denied his sick call requests; after a doctor prescribed suppositories, he told the nurses on numerous occasions that the suppositories were not working, and that he needed to go to the hospital. He also alleged that he showed each nurse on one occasion toilet paper with blood on it allegedly from his hemorrhoids. *See* Am. Compl., ECF Nos. 40, ¶¶ 2–4, 7-8, 11, 15–17.

Preliminarily, the Court addresses Plaintiff's failure to oppose the motion for summary judgment. Even though no opposition was filed, the Court may construe a verified complaint as an affidavit for summary judgment purposes and consider statements therein that are made on personal knowledge. *See Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016) ("Though we may treat [plaintiff's] verified complaint as an affidavit for summary judgment purposes, 'the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge.'") (quoting *Conlon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). However, Plaintiff's Amended Complaint is not verified. The Amended Complaint includes a section labeled "Verification" which states: "I, Jean Karlo Conquistador, the Plaintiff In Propria Persona herein hereby verify & certify that the matters alleged herein are true and correct to the best of my ability." ECF No. 40 at 6. But to be considered as an affidavit, an unsworn statement must be made under penalty of perjury. *See* 28 U.S.C. § 1746 (explaining that to have the effect of an affidavit, an unsworn statement must be made under penalty of perjury). Thus, Plaintiff's Amended Complaint is not a verified complaint and Plaintiff's allegations are insufficient to counter Defendants' evidence offered in support of the motion. Plaintiff's original Complaint was properly verified. *See* ECF No. 1 at 8. Even though it is not the operative complaint, the Court will consider the allegations in the original Complaint as evidentiary in nature as they relate to the

claims against Defendants when assessing the motion for summary judgment.

*Deliberate Indifference to Serious Medical Needs*

Plaintiff was a sentenced prisoner while he was confined at Garner. Thus, his claims for deliberate indifference to medical needs are cognizable under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of sentenced prisoners are considered under Eighth Amendment). To establish a claim for deliberate indifference to serious medical needs, Plaintiff must present evidence showing that his medical need was "sufficiently serious" so as to implicate the Eighth Amendment prohibition against cruel and unusual punishment. *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiff also must show that Defendants acted with the requisite *mens rea*, insofar as they were deliberately indifferent to his serious medical needs. This requirement is subjective: "the

charged officials must be subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (quotation marks omitted)). Thus, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Further, a "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau Cty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance*, 143 F.3d at 703).

In addition to the statement of material facts which are deemed admitted, in support of their motion for summary judgment, Defendants submitted copies of Plaintiff's medical records including the period from February of 2019 through August of 2019 when he was confined at Garner. *See* Defs.' Mem. Ex. A, ECF No. 59. Of the 727 pages, only 49 contain reports of interactions between Plaintiff and these Defendants. And those relevant to the claims asserted in this case are set forth above.

Plaintiff alleges that his serious medical need was hemorrhoids. Most courts considering this issue have held that hemorrhoids and rectal bleeding do not constitute a serious medical need for purposes of an Eighth Amendment claim. *See Green v. Shaw*, No. 3:17-cv-00913 (CSH), 2019 WL 1427448, at *6 (D. Conn. Mar. 29, 2019) (citing cases). And even where the allegations are

10

sufficient to survive initial review, the evidence may ultimately fail to establish a serious medical need. *See Muhammad v. New York Dep't of Corrs.*, No. 10-cv-1707 (RJS) (RLE), 2011 WL 797506, at *3, (S.D.N.Y. Feb. 3, 2011) (finding complaint alleging that hemorrhoid caused plaintiff "to experience 'unbearable and excruciating pain,' left him 'chronically weaken[ed],' and has interfered with daily activities by making it 'practically impossible' for him to use the bathroom," "sufficiently pled that his medical condition constituted a serious medical need" but noting that "[i]t may become clear, at some later stage in the litigation, that [the] claims are not adequately supported"), *report and recommendation adopted*, 2011 WL 797672 (S.D.N.Y. Mar. 3, 2011).

Here, the medical record contains no mention of hemorrhoids prior to July 9, 2019, at which time, Nurse Graniello told Plaintiff to submit a medical request. The records contain no complaint by Plaintiff that he was in severe pain on that date or that his hemorrhoids were causing pain prior to that date.[3] Nurse Ralph saw Plaintiff on July 19, 2019, just ten days later. She provided some treatment for hemorrhoids and also referred Plaintiff to a doctor for prescriptions and treatment she could not provide. Plaintiff saw a doctor five days later on July 24, 2019 and received additional treatment. One week later, on July 31, 2019, Plaintiff reported positive results to the doctor, including that he had no pain. In sum, the medical record reveals that Plaintiff's hemorrhoid was not a serious medical need. Nor does the record reveal that Plaintiff's request for treatment were ignored by Defendants. To the contrary, once Plaintiff told Defendants that he had a hemorrhoid, he received prompt treatment.

---

[3] For example, when Nurse Graniello saw Plaintiff on June 10, 2019, he had no complaints of pain. Defs.' Mem. Ex. A. ECF No. 59 at 484–85.

In his verified original Complaint, Plaintiff alleged that Defendants "refused to do sick call with Plaintiff until July 2019 (for hemorrhoids)." ECF No. 1 at 4, ¶ 5. However, Plaintiff submits no evidence that he requested medical treatment for hemorrhoids from Defendants prior to July 9, 2019 and has admitted that he first mentioned his hemorrhoid to the medical unit on that date. Thus, there is no evidence that, even if he had a serious medical need, Defendants were aware of that need prior to July of 2019.

Plaintiff also alleges in his verified original Complaint that "[o]n numerous occasions plaintiff shared with Defendants that suppositories were not working, and that he may need to go to a hospital." ECF No. 1 at 4, ¶ 7. Plaintiff does not identify the Defendant with which he shared this information or even whether he did so while confined at Garner or after he was transferred to another facility.[4] And this allegation is belied by the medical record. Although the medical record contains sixteen medical requests and grievances filed at Garner, only one medical request mentioned hemorrhoids. That request is dated July 28, 2019, three days before Plaintiff reported positive results to the doctor, and states that he continued to bleed when defecating. Doc. No. 59 at 427. Further, it was a nonparty nurse who responded to the request. Accordingly, there is no evidence that Nurses Gomes, Ralph, and Graniello were aware of any continued complaints regarding Plaintiff's hemorrhoid as being a continuing serious medical need. Indeed, Plaintiff's statements to the doctor a few days later indicate that it was not.

Also in the verified original Complaint, Plaintiff alleged that, on multiple occasions, he "complained of having an over-inflated external hemorrhoid that causes him pain when he sits and lays on his back. That sleeping on his side is the only remedy for the pain." Doc. No. 1 at 5, ¶ 10.

---

[4] In the original Complaint, Plaintiff named as Defendants nurses at Garner and Bridgeport Correctional Center.

Plaintiff does not allege that he made these complaints to any Defendant, or that he submitted medical requests containing this information. And the record from Garner reveals that he did not.[5] Thus, even if there is a genuine issue of material fact as to whether Plaintiff had a serious medical need, he presents no evidence demonstrating that Defendants were aware of and disregarded that need.

In sum, Plaintiff's general allegations are insufficient to overcome the lack of supporting evidence in his medical records, the contradictory evidence in those records, and the material facts deemed admitted. Defendants' motion for summary judgment with respect to the Eighth Amendment claim for deliberate indifference to serious medical needs is GRANTED. *See Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012) (summary order) (affirming summary judgment where "the only evidence that [plaintiff] suffered 'extreme pain' is his own allegation in the verified complaint" and plaintiff "failed to corroborate his allegation with any details, beyond the general diagnoses . . . of his medical history, the severity of his prior suffering, or the medications he has been prescribed"); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment where sworn deposition testimony, although specific, was "unsupported by documentary or other concrete evidence" and was "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, No. 03-cv-3789 (NRB), 2006 WL 357824, at *3–4 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and was insufficient to create issue of fact where statements were discredited by evidence).

*Qualified Immunity*

---

[5] As this allegation immediately precedes a paragraph describing a request for medical attention at a different facility, the inference to be drawn is that such a request, if made, was made at the facility to which Plaintiff was transferred.

Defendants also argue that, even if there is a genuine issue of material fact as to whether Plaintiff had a serious medical need, they are protected by qualified immunity because neither the Supreme Court nor the Second Circuit have held that hemorrhoids are a serious medical need implicating the protections of the Eighth Amendment.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity would be denied to an official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Qualified immunity "affords government officials 'breathing room' to make reasonable— even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

The Supreme Court repeatedly has stated that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017)

14

(quoting *al-Kidd*, 563 U.S. at 742); *see also City of Escondido v. Emmons*, ___ U.S. ___, 139 S. Ct. 500, 503 (2019) ("Under our cases, the clearly established right must be defined with specificity. 'This Court has repeatedly told courts . . . not to define clearly established law at a low level of generality.'") (quoting *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam)). The legal principle at issue must clearly prohibit the officer's conduct in the particular circumstances before him. *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 590 (2018); *see also Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) ("rights are only clearly established if a court can 'identify a case were an officer acting under similar circumstances' was held to have acted unconstitutionally") (quoting *White*, 137 S. Ct. at 552). However, it is not necessary to identify a decision squarely on point to defeat qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. . . .").

In considering whether a right is clearly established, the Court must consider Supreme Court or Second Circuit cases and determine what a reasonable officer would understand in light of that law. *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014); *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("district court decisions—unlike those from the courts of appeal—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity"). While district court cases cannot establish a constitutional right, a split among the district courts within a circuit can show that the right is not clearly established. *See Gill v. DeFrank*, 8 F. App'x 35, 37 (2d Cir. 2001) (summary order) (affirming a district court's determination that right was not clearly established based on disagreement among the district courts). The Court considers whether a holding prohibits the conduct in question as well as whether decisions clearly

15

foreshadow such a ruling. *Terebesi*, 764 F.3d at 231. Absent a "case of controlling authority" or "a consensus of cases of persuasive authority," the officers "cannot have been 'expected to predict the future course of constitutional law.'" *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (quoting *Procunier v. Navarette*, 434 U.S. 555, 562 (1978)).

The Second Circuit has not held that hemorrhoids are a serious medical need and numerous district court cases have found that they are not. *See Green*, 2019 WL 1427448, at *6 (citing cases). Absent controlling authority, a reasonable health care provider would not understand that hemorrhoids are a serious medical need and failing to promptly treat them is a constitutional violation. Thus, Defendants also are protected by qualified immunity and summary judgment is appropriate on this basis as well.

**Conclusion**

Defendants' motion for summary judgment is **GRANTED**. (ECF No. 60) The Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of December 2022.

  */s/ Kari A. Dooley*
  Kari A. Dooley
  United States District Judge

16